Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Michelle A. Clark (Bar No. 243777)
michelleclark@quinnemanuel.com
Lance Yang (Admitted *Pro Hac Vice*)
lanceyang@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Michael Powell (Bar No. 202850)
michaelpowell@quinnemanuel.com
Suong T. Nguyen (Bar No. 237557)
suongnguyen@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, Fifth Floor
Redwood Shores, CA 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Thomas D. Pease (Admitted *Pro Hac Vice*)
thomaspease@quinnemanuel.com
Carlos A. Rodriguez (Admitted *Pro Hac Vice*)
carlosrodrigeuz@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Attorneys for Plaintiff STMicroelectronics, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STMICROELECTRONICS, INC., | CASE NO. CV 12-2475 JSW |
| Plaintiff, | **PLAINTIFF STMICROELECTRONICS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY STAY PROCEEDINGS PENDING REEXAMINATION OF U.S. PATENTS** |
| vs. | |
| INVENSENSE, INC., | |
| Defendant. | Date:   January 11, 2013<br>Time:  9 a.m.<br>Judge: Honorable Jeffrey S. White |

## SUMMARY OF ARGUMENT

Defendant InvenSense, Inc. ("InvenSense") is infringing at least nine different patents belonging to Plaintiff STMicroelectronics, Inc. ("ST"), and using those patents to compete directly with ST in the market for "MEMS motion sensor" technologies.  Having been hailed into court to answer for that infringement of nine patents, InvenSense filed re-examination requests with the USPTO for some (but not all) claims of seven of the nine patents.  InvenSense shortly thereafter asked this Court for a partial stay ("Motion"), in hopes that no jury will hear of its putative infringement on such a broad scale.  Instead, the Motion proposes that ST should assert just two patents at this time, and all other patents should be litigated only if surviving re-examination.

The Motion should be denied.  The case law provides that a stay should be granted, pending a re-examination, only if doing so would (*inter alia*) streamline the litigation and not impose undue prejudice on the non-moving party.  This Motion if granted would not streamline the litigation.  To the contrary, it would splinter the case into two separate jury trials, two or three years apart, on the same narrow field of technology (MEMS motion sensors) and covering the same accused products.  That would be a massive waste of resources for the parties, third parties, witnesses, the Court and two or more separate juries.  That waste of resources is particularly unforgiveable given that InvenSense's re-examination campaign is not even ***capable*** of precluding future litigation on two of the seven patents that InvenSense is challenging at the USPTO.

Furthermore, the Motion if granted would work substantial prejudice on ST both in the marketplace and in the court room.  ST and InvenSense are ***direct competitors*** in the growing and highly competitive field of MEMS motion sensors.  InvenSense's Motion may fairly be construed as a litigant's request to use a competitor's intellectual property for an extra two or three years without judicial review.  That is unfair, as district courts around the country have recognized in denying stays by litigants attempting to stay a case precisely as InvenSense seeks to do with the instant Motion.

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

I.      INTRODUCTION ................................................................................................1

4

II.     STATEMENT OF FACTS ..................................................................................3

5

III.    ARGUMENT .......................................................................................................5

6

A.    Legal Standard .........................................................................................5

7

B.    A Partial Stay Would Drastically Increase the Burden of Litigation for All
8          Parties and the Court ...............................................................................5

9          1.    On its face, the Motion asks for a "partial" stay that would splinter
               (not simplify) the case ...................................................................5

10

11         2.    A partial stay would conceivably make sense only if it were likely
               (which it is not) that none of the patents survive re-examination ...................6

12         3.    The motion seeks to splinter litigation on overlapping subject
               matter—the same field of technology and the same accused products..........6

13

14         4.    USPTO statistics show that it is overwhelmingly likely that re-
               examinations will not dispose of the seven challenged ST patents,
               meaning a "partial" stay right now will result in redundant and
15             burdensome litigation over multiple years...................................................8

16         5.    If anything, those USPTO statistics understate the likelihood that the
               the challenged ST patents will survive re-examination ...............................9

17

18         6.    InvenSense's "claim construction" rationale for a partial stay is
               wrong on the law.......................................................................................10

19     C.    A Partial Stay Would Substantially Prejudice ST in this Litigation and in
               the Competitive Marketplace ..................................................................10

20

21         1.    The case law is clear that competitors—such as ST and
               InvenSense—are uniquely prejudiced by even a temporary delay in
               patent litigation ........................................................................................11

22

23         2.    InvenSense's case law on "prejudice" is unavailing..................................13

       D.    The Stage of Litigation Does Not Weigh in Favor of a Stay...............................14

24

IV.    CONCLUSION.................................................................................................15

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4   *Acumed LLC v. Stryker Corp.*,
        551 F.3d 1323 (Fed. Cir. 2008)..................................................................................11
5
    *Akeena Solar Inc. v. Zep Solar Inc.*,
6       2010 U.S. Dist. LEXIS 47909 (N.D. Cal. Apr. 14, 2010) .........................................15

7   *Aten Int'l Co. v. Emine Tech. Co*
        2010 U.S. Dist. LEXIS 46226 (C.D. Cal. Apr. 12, 2010) .........................................13
8
    *Avago Techs. Fiber IP (Sing.) Pte Ltd. v. Iptronics Inc.*,
9       2011 U.S. Dist. LEXIS 82665 (N.D. Cal. July 28, 2011).........................................12

10  *Biomet Biologics, LLC v. Bio Rich Med., Inc.*,
        2011 U.S. Dist. LEXIS 109282 (C.D. Cal. Sept. 26, 2011)..................................6, 12
11
    *Broadcom Corp. v. SiRF Tech., Inc.*,
12      2009 U.S. Dist. LEXIS 131888 (C.D. Cal. July 20, 2009) ........................................15

13  *Convergence Techs. (USA), LLC v. Microloops Corp.*,
        2012 U.S. Dist. LEXIS 51794 (N.D. Cal. Apr. 12, 2012) .........................................14
14
    *Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
15      582 F.3d 1288 (Fed. Cir. 2009).................................................................................11

16  *Gladish v. Tyco Toys*,
        1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sept. 16, 1993).........................................6
17
    *Hoechst Celanese Corp. v. BP Chemicals Ltd.*,
18      78 F.3d 1575 (Fed. Cir. 1996)...................................................................................11

19  *IMAX Corp. v. In-Three, Inc.*,
        385 F. Supp. 2d 1030 (C.D. Cal. 2005) ......................................................................5
20
    *IpVenture, Inc. v. FedEx Corp.*,
21      2012 U.S. Dist. LEXIS 55962 (N.D. Cal. Apr. 20, 2012) .........................................15

22  *Kla-Tencor Corp. v. Nanometrics, Inc.*,
        2006 U.S. Dist. LEXIS 15754 (N.D. Cal. Mar. 16, 2006).........................................14
23
    *Largan Precision Co. v. Fujifilm Corp.*,
24      2011 U.S. Dist. LEXIS 25423 (N.D. Cal. Mar. 1, 2011) ..........................................15

25  *Mike's Train House, Inc. v. Broadway Ltd. Imps., LLC*,
        2011 U.S. Dist. LEXIS 22224 (D. Md. Mar. 3, 2011)...............................................12
26
    *Network Appliance, Inc. v. Sun Microsystems, Inc.*,
27      2008 U.S. Dist. LEXIS 76717 (N.D. Cal. May 23, 2008) ......................................6, 15

28

*Phillips v. AWH*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................. 10

*Photoflex Prods. v. Circa 3 LLC*,
    2006 U.S. Dist. LEXIS 37743 (N.D. Cal. May 24, 2006) ........................................ 13

*Sorensen v. Digital Networks N. Am., Inc.*,
    2008 U.S. Dist. LEXIS 6454 (N.D. Cal. Jan. 16, 2008) ..................................... 5, 15

*Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*,
    2011 U.S. Dist. LEXIS 90497 (W.D.N.Y. Aug. 15, 2011) ........................................ 15

*Sunbeam Prods. v. Hamilton Beach Brands, Inc.*,
    2010 U.S. Dist. LEXIS 45654 (E.D. Va. May 7, 2010) .................................... 12, 13

*Tesco Corp. v. Weatherford Int'l, Inc.*,
    599 F. Supp. 2d 848 (S.D. Tex. 2009) ..................................................................... 12

*United Pet Group, Inc. v. MiracleCorp Products*,
    2012 U.S. Dist. LEXIS 88926 (E.D. Mo. 2012) ...................................................... 12

*Viskase Corp. v. American Nat'l Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001) ........................................................................... 5, 15

*In re Yamamoto*,
    740 F.2d 1569 (Fed. Cir. 1984) ............................................................................... 10

## I.     **INTRODUCTION**

Defendant InvenSense, Inc. ("InvenSense") is not only infringing at least nine different patents belonging to Plaintiff STMicroelectronics, Inc. ("ST"), it is using technology covered by those patents to compete unfairly with ST in the marketplace, going after the same customers and design wins for critical motion sensing devices in various applications.  In response, InvenSense has asserted two of its own patents through counter-claims and has sought *ex parte* USPTO re-examinations of seven of ST's nine asserted patents.  Based on those re-examination proceedings—covering only a portion of the patents ST asserts in this case—InvenSense now asks the Court for a "partial" stay of proceedings ("Motion").  Not surprisingly, while asking the Court to stay most of ST's claims against it, InvenSense asks to move forward at full speed with its counter-claims against ST.

This Court should deny the Motion.  <u>First</u>, it does not address all asserted patents, does not purport to stay the case as a whole, and would not streamline the litigation.  Instead, it would fracture and complicate the litigation.  It would force the parties, third parties, witnesses, the Court, and a jury to delve into at least four patents right now—two from each party—covering sophisticated semiconductor technologies and competing products ("Non-Stayed Patents").  Some years later, it would force the same parties, many of the same third parties and witnesses, the same Court and yet a different jury of laypersons to delve into additional patents for a second trial— covering the *same* narrow field of semiconductor technologies and the exact same accused products.  The Motion would have this litigation address complicated and over-lapping technologies and product offerings at least two different times spread over multiple years.  That is not efficient.  That is a waste of resources, and a hardship for everyone involved.

InvenSense may argue that the Motion will not necessarily result in fractured, multi-year and multi-jury litigation, depending on how the USPTO handles the patent re-examinations initiated by InvenSense.  But that argument cannot be made with a straight face.  To avoid a second trial in the future, InvenSense would have to prevail at the USPTO with a 100% success rate on *all* claims of *all seven* of the re-examinations it has initiated ("Seven Patents").  According to USPTO statistics, the chances of that happening are *one in three million*.  Moreover, by not re-

1   examining all of the claims on two of the Seven Patents, a stay as to those two patents makes even

2   less sense.  Even if all challenged claims on those two patents were rejected during a re-

3   examination, ST will be free to assert the non-challenged claims in the future once the stay is

4   lifted.  InvenSense's Motion will bifurcate this litigation into two different trials a few years apart

5   on the same subject matter—one trial in the near future on the Non-Stayed Patents, and another

6   trial about two years later on at least two (but more likely all) of the Seven Patents that are the

7   subject of the Motion.

8          Second, if the Motion were granted, that would severely prejudice ST both in the

9   marketplace and in the court room.  In the marketplace: InvenSense is not just infringing nine of

10  ST's patents.  InvenSense is infringing those patents to compete directly with ST in the growing

11  and contested market for MEMS motion sensors.  "MEMS" stands for micro-electro-mechanical

12  systems.  MEMS motion sensors are tiny semiconductor products that track the movement of a

13  device in space, such as gaming controllers, mobile communication devices, pedestrian navigation

14  devices, and various healthcare and automotive applications.  ST and InvenSense both offer

15  competing MEMS motion sensor products in the market.  InvenSense's Motion must therefore be

16  viewed in light of this competitive landscape.  InvenSense is asking for a "free pass" for multiple

17  years—as the USPTO re-examination process plays out seven different times—to practice ST's

18  patents without permission, to grow brand recognition, and to capture market share by knowingly

19  selling infringing products.

20         In the court room: The Motion if granted would prejudice ST substantially, and provide

21  InvenSense with improper litigation advantages without resulting in any judicial economy.

22  Tellingly, InvenSense makes a ***one-sided request*** to stay ST's Seven Patents on MEMS

23  technology, while moving forward on its two counterclaim patents on the same subject matter.

24  InvenSense is not interested in conserving judicial resources; rather, it wants desperately to level

25  the playing field and to distort the facts.  As framed by the pleadings, this case is about

26  InvenSense's campaign of willful infringement of not just one or two patents but rather of at least

27  nine different ST patents.  InvenSense does not want that case to be heard by a jury.  Instead,

28  InvenSense hopes to present an artificial case of "patent parity" between the parties—two

1   apiece—and to hide from the jury the pervasiveness of its infringing conduct across ST's patent

2   portfolio and the fact that ST's pioneering work on MEMS technology predates InvenSense's

3   work by *at least a decade.*  Such a scenario would be misleading and unfaithful to the pleadings,

4   and would deprive ST of the opportunity to make its case to the jury.

5         Lastly, the Motion would not just prejudice ST for the first jury trial in this case, assuming

6   that trial covered just two patents per side.  It would prejudice ST across the life of the litigation—

7   which, if the Motion were granted, would take years on end and involve at least two separate jury

8   trials.  ST would be prejudiced by being forced to conduct at least two separate jury trials to

9   vindicate its intellectual property rights—one without a stay, and one or more in future years when

10   the USPTO re-examination proceedings are resolved and a stay is lifted.  That specter prejudices

11   all involved parties—including the Court—except InvenSense.

12         ST asks this Court not to tolerate InvenSense's litigation tactics.  ST has asserted nine

13   patents.  ST should be heard on those patents, notwithstanding InvenSense's "partial" re-

14   examination campaign.

15   **II.**     **STATEMENT OF FACTS**

16         ST, with its parent STMicroelectronics NV, is a global leader in the semiconductor market,

17   serving customers across the spectrum of sense and power technologies and multimedia

18   convergence applications.  ST maintains advanced R&D centers around the world, including in the

19   United States.

20         One area in which ST has made a substantial and long-term R&D investment is in the

21   MEMS field.  ST was the first major manufacturer in the world to start producing MEMS on 8-

22   inch silicon wafers.  Complaint, Dkt. No. 1 at 4:6-7.  ST introduced the world's first high-

23   performance 3-axis MEMS gyroscope.  *Id.* at 4:9-10.  ST's MEMS are employed as the "Free

24   Fall" feature in notebook computers to protect data.  *Id.* at 11-12.  ST's MEMS are also used in

25   devices like smart phones, tablets, digital cameras, and game consoles with motion-activated

26   interfaces.  *Id.* at 12-14.  ST has been recognized by independent media as "the top supplier of

27   motion-sensing accelerometers to cell phones, tablets, laptops and video game consoles." *ST*

28   *MEMS Revenues Nearly Double with Apple in Customer Roster*, Solid State Technology, April 5,

1    2012, *available at* www.electroiq.com/articles/stm/2012/04/st-mems-revenues-nearly-double-

2    with-apple-in-customer-roster.html (last visited Oct. 10, 2012).

3           Defendant InvenSense seeks to compete with ST in the MEMS market with a product line

4    that includes motion processing units, digital gyroscopes, and related devices.  In doing so,

5    InvenSense has expanded from "its heavy dependence on gaming" in the past, and is "diversifying

6    into mobile handsets and tablets [as of] last year."  *Id.*  Reporters have noted that ST is

7    InvenSense's "top competitor in making motion-sensing devices."  Sarah Frier, *InvenSense Falls*

8    *on SanDisk Sales Forecast*, Bloomberg, April 4, 2012, *available at* www.bloomberg.com/news/

9    2012-04-04/invensense-falls-on-sandisk-sales-forecast-san-francisco-mover.html (last visited Oct.

10   10, 2012).

11          On May 16, 2012, ST filed the Complaint in this case, alleging infringement by

12   InvenSense of U.S. Patent Nos.  6,504,253 ('253), 6,846,690 ('690), 6,546,799 ('799), 6,405,592

13   ('592), 7,450,332 ('332), 7,409,291 ('291), 5,874,850 ('850), 6,928,872 ('872), and 5,986,861

14   ('861).  In the Complaint, ST named MEMS gyroscopes and motion sensors sold by InvenSense

15   as infringing products.

16          InvenSense responded by filing counterclaims on July 6, 2012, alleging that ST infringes

17   U.S. Patent Nos.  7,290,435 ('435) and No. 7,458,263 ('263).  In its counterclaims, InvenSense

18   alleged infringement by MEMS gyroscopes and motion sensors sold by ST.

19          On September 11 and 12, 2012, InvenSense filed *ex parte* re-examination requests with the

20   USPTO for seven of ST's nine originally asserted patents, namely the '253 (Claims 1-6, 8-10, 17,

21   23, 24), '690, '799, '592, '332, '291 (Claims 1-3, 7, 19, 20, 25, 26), and '872 patents.  And on

22   September 26, 2012, InvenSense filed the instant Motion, asking for a partial stay of proceedings.

23   The Motion does not ask to stay this case in its entirety.  The Motion asks instead that InvenSense

24   be permitted to move forward with both of its counterclaims, and that ST be permitted to proceed

25   with only two of its nine asserted patents.

1  **III.**   **ARGUMENT**

2     **A.**    **Legal Standard**

3         When deciding whether to stay proceedings pending a patent re-examination by the

4  USPTO, district courts generally consider three factors:  "(1) the stage of the litigation, including

5  whether discovery is or will be almost completed and whether the matter has been marked for

6  trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and

7  (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the

8  burden of litigation on the parties and on the court."  *Sorensen v. Digital Networks N. Am., Inc.*,

9  2008 U.S. Dist. LEXIS 6454, at *3-4 (N.D. Cal. Jan. 16, 2008).

10        Decisions on motions to stay are well within a court's discretion, and "the court is not

11  required to stay judicial resolution in view of the reexaminations."  *Viskase Corp. v. American*

12  *Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

13     **B.**    **A Partial Stay Would Drastically <u>Increase</u> the Burden of Litigation for All**

14           **Parties and the Court**

15        District courts consider granting a stay if doing so would "simplify the issues in question

16  and streamline the trial, thereby reducing the burden of litigation on the parties and on the court."

17  *Sorensen*, 2008 U.S. Dist. LEXIS 6454, at *3-4.  Not only is the Motion incapable of

18  accomplishing those goals, it is almost a certainty that it will accomplish the opposite.  Granting

19  the Motion would prolong the case by years, fracture the trial, and substantially increase the

20  burden of litigation on the parties, third parties, witnesses, jurors and the Court.

21        **1.**    **On its face, the Motion asks for a "partial" stay that would splinter (not**

22           **simplify) the case**

23        As an initial matter, the Motion does not even attempt to stay all aspects of this case.

24  Instead, InvenSense proposes that its two patents and two of ST's patents should be tried in the

25  near future.  Only later—InvenSense proposes—would the additional seven patents be litigated by

26  the parties.  That is not simplification; it is piecemeal case management, and it has been rejected

27  by courts of this Circuit in the past.  *See, e.g.*, *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030,

28  1033, (C.D. Cal. 2005) (denying motion for partial stay pending re-examination of plaintiff's

1  asserted patent but not counter-claim patents in part because "[t]he issues in this case would not be

2  sufficiently simplified to justify a stay"); *Network Appliance, Inc. v. Sun Microsystems, Inc.*, 2008

3  U.S. Dist. LEXIS 76717, at *8 (N.D. Cal. May 23, 2008) (denying defendant's motion for partial

4  stay pending reexamination of some but not all patents),  *Biomet Biologics, LLC v. Bio Rich Med.,*

5  *Inc.*, 2011 U.S. Dist. LEXIS 109282, at *8 (C.D. Cal. Sept. 26, 2011) (denying defendant's motion

6  for partial stay pending reexamination where other non-re-examined patents remained in the case);

7  *Gladish v. Tyco Toys*, 1993 U.S. Dist. LEXIS 20211, at *6-7 (E.D. Cal. Sept. 16, 1993) (rejecting

8  a motion to stay because the re-examination proceedings proposed as a basis for a partial stay

9  "will not finally resolve all the issues in the litigation" and reasoning that a partial stay "would not

10  serve Congress' intent of simplifying the issues and reducing the complexity of trial").

11          **2.**      **A partial stay would conceivably make sense only if it were likely**

12                    **(which it is not) that none of the patents survived re-examination**

13        InvenSense's motion for a partial stay would simplify this case in the future only in the

14  event that the USPTO ends up rejecting all claims from all seven of the patents sought to be

15  reexamined.  If that were ***likely***, ST concedes that a stay would conceivably make sense.  But here,

16  that scenario is not only implausible, it is impossible considering that not all claims of two of the

17  seven patents are even at issue in the re-examintion petitions filed by InvenSense.  Thus, the idea

18  that there would be nothing left to litigate between ST and InvenSense following the conclusion of

19  the re-examination proceedings is impossible.

20        Because one or more claims from one or more of the seven patents sought to be re-

21  examined will "survive" re-examination, the issuance of a partial stay at this time (as the Motion

22  requests) will have succeeded only in forcing the parties, third parties, witnesses, the Court and a

23  second jury to address patent disputes within the same MEMS motion sensor field, and the same

24  infringing InvenSense products, a second time at some point in the future.

25          **3.**      **The motion seeks to splinter litigation on overlapping subject matter—**

26                    **the same field of technology and the same accused products**

27        InvenSense cannot dispute in good faith that litigation right now—on the Non-Stayed

28  Patents—would be needlessly redundant with litigation in the future on one or more claims of the

PLAINTIFF'S REPLY TO DEFENDANT'S MOTION TO PARTIALLY STAY

patents that InvenSense has recently challenged at the PTO.  The Non-Stayed Patents (that would

be tried regardless of a partial stay of the case) all cover technologies used in the parties' MEMS

motion sensor products.  *See*, *e.g.*, U.S. Patent No. 7,290,435 at 1:7-9 ("The present invention

relates generally to MEMS gyroscopes, and in particular methods for compensating for quadrature

error in MEMS gyroscopes"); U.S. Patent No. 7,458,263 B2 at 13:19-22 ("In a preferred

embodiment, an angular rotation sensor (or gyroscope) . . . is fabricated with micromachining

technology (also known as MEMS technology").  Those same patents are understandably asserted

against the competing product offerings of InvenSense and ST in the MEMS motion sensor field.

*Compare* Complaint at 14:23, 15:17 (accusing InvenSense's IDG-300 Integrated Dual-Axis

Gyroscope and IMU-3000 Triple Axis MotionProcessor Gyroscope), *with* Answer to Complaint,

Dkt. No. 24, at 19:5-7, 2017-19 (accusing ST's V654A L3G4200D 3-Axis Gyroscope ASIC).  The

seven ST Patents that InvenSense has challenged through *ex parte* re-examination proceedings

likewise cover the ***same*** field of technology and the ***same*** types of accused products.  All seven are

directed at MEMS technology, including semiconductor technologies that enable motion sensing.

*See*, *e.g.*, U.S. Patent No. 6,405,592 at 2:45-46 ("The sensitive element 105 includes, for example,

a . . . MEMS"); U.S. Patent No. 6,504,253 at 2:46-47 ("a process for manufacturing a micro-

electromechanical system," or MEMS"); U.S. Patent No. 6,846,690 at 2:55-61 ("The invention

therefore provides a process for fabricating an integrated circuit, comprising . . . a MEMS-type

component"); U.S. Patent No. 6,928,872 at 1:19-22 (discussing "integrated gyroscopes of

semiconductor material, manufactured using MEMS (Micro-Electro-Mechanical Systems)

technology"); U.S. Patent No. 7,409,291 at 3:27-29 (discussing "linear inertial sensors, made

using MEMS (Micro-Electro-Mechanical Systems) technology"); U.S. Patent No. 7,450,332 at

4:52-53 ("The accelerometer 20 is of a known type, including a MEMS").  And ST accuses

InvenSense's gyroscope products of infringing not only the seven patents sought to be re-

examined, but also the two ST patents that InvenSense has ***not*** asked the Court to stay.  Complaint

at 9:13, 10:7, 10:27, 11:20, 12:14, 13:10, 14:3, 14:23, 15:17.

Because of the overlap in technology and accused products, any litigation now (on the

Non-Stayed Patents that InvenSense seeks to litigate immediately) and any litigation in the future

1   (on any of the patents that InvenSense seeks to set aside with a temporary stay) would be

2   redundant in important respects.  To be clear, these patents are all distinct and contain separate

3   claims.  But the patents that InvenSense asks to stay, and those that InvenSense seeks to litigate

4   immediately, are all directed to closely related technologies for use in MEMS devices.

5           **4.      USPTO statistics show that it is <u>overwhelmingly</u> likely that re-**

6                   **examinations will <u>not</u> dispose of the seven challenged ST patents,**

7                   **meaning a "partial" stay right now will result in redundant and**

8                   **burdensome litigation over multiple years**

9           According to the most recent USPTO statistics, 23% of all patents subjected to *ex parte* re-

10  examinations survive unscathed, without a single claim rejection and without even a single claim

11  amendment.  Declaration of Rudy Y. Kim in Support of Motion, Ex. 1, at 2.  As a matter of simple

12  math, this means it is 84% likely that at least one of the challenged ST patents will not only

13  survive the *ex parte* re-examination, but will survive with its claim language untouched.[1]  The

14  84% likelihood moreover assumes that the USPTO will grant all seven of InvenSense's requests.

15  In fact, a non-negligible 8% of third party requests are rejected.  *Id*.  Including the possibility of

16  rejection, it is 91% likely that at least one of the patents will survive unscathed.

17          Similarly, the most recent USPTO statistics indicate that 67% of all patents subjected to *ex*

18  *parte* re-examinations survive in some form, for example with some but not all claims allowed

19  and/or with some claims surviving after amendment.  *Id*.  It is a certainty that among these patents

20  will be ST's '253 and '291 patents, which will have surviving claims **no matter** what the USPTO

21  decides,  Even aside those two patents, as a matter of simple math, it would still be 99.6% likely

22  that at least one of the other five other patents will survive re-examination and will be ripe for

23  litigation at some point in the future.  Given the overlapping subject matter and accused products

24  between the Non-Stayed Patents and the patents that are the subject of InvenSense's re-

25  examination petitions, and given the objective statistics showing that it is 99+% likely that one or

26  _____

27          [1]  As discussed, *supra*, it is in fact a certainty that certain claims of the '253 and '291 patent
    will survive reexamination simply because InvenSense **has not challenged them**.

28

more claims will survive re-examination, InvenSense has put itself in an awkward position before this Court.  InvenSense is asking for a partial stay of the case—nominally on "efficiency" grounds—while the statistics indicate it is overwhelmingly likely that a partial stay will result only in protracted, piecemeal litigation and possibly even two separate jury trials between the same parties on the same accused products.

     **5.**     **If anything, those USPTO statistics <u>understate</u> the likelihood that the the challenged ST patents will survive re-examination**

InvenSense may argue that USPTO statistics should not be applied to the seven re-examinations it has initiated, for example because its re-examinations are uniquely strong.  That argument would be misplaced.  InvenSense's re-examinations are notable if anything for being particularly limited, citing very few pieces of art (including references already considered by the USPTO) and focusing on only a few, circumscribed new questions of patentability.

Taken individually, each *ex parte* re-examination request filed by InvenSense raises only a few—in many cases, *only one*—pieces of prior art and makes only a few—in many cases, *only one*—novel arguments on the question of patentability that the original patent examination did not fully consider. Furthermore, in many instances it is obvious from even a cursory review that the substance of InvenSense's re-examination papers is lacking.  By way of example, only: The '253 re-examination request filed by InvenSense relies on only a single piece of new prior art, the "Kurtz" patent.  Kim Dec., Exhibit 2, at 9-11.  InvenSense claims Kurtz will teach one feature claimed by the '253 patent but purportedly missing from the other prior art, namely that a semiconductor plug between layers of substrate will be made of the same material as the substrate. *Id.* at 4.  The re-examination request includes a diagram from the Kurtz patent to support that argument.  *Id.*  The diagram includes a box that that purports to indicate that the plug and the substrate are made from the same material, as indicated by the same hash marks.  Yet, from simple visual inspection, the plug clearly goes through a different kind of material, indicated by different hash marks.  *Id.*  There is no way the Kurtz patent can anticipate the '253 patent.  And yet, InvenSense provides *no other reference* in its re-examination request.

6.      **InvenSense's "claim construction" rationale for a partial stay is wrong on the law**

InvenSense argues that it makes sense to wait to construe the claim language of the challenged patents until after the re-examinations. The USPTO's re-examinations, however, will employ the "broadest reasonable interpretation" of claims. *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984). By contrast, when district courts construe claim language in infringement cases, they take a narrower approach based on a combination of intrinsic and extrinsic evidence. *Phillips v. AWH*, 415 F.3d 1303 (Fed. Cir. 2005). Any claim construction by the USPTO during re-examination could not, therefore, act as a meaningful guide to this Court in some future claim construction. *Id.* at 1317 (holding that re-examination proceedings are "less useful" than other intrinsic evidence for claim construction purposes). And if InvenSense attempted in the future— for example *after* a re-examination and *after* a partial stay had been lifted—to rely on the re-examination record for claim construction in this case, that would conflate differing legal standards for claim construction and at best be a citation to what the Federal Circuit has held to be "less important" materials.

C.      **A Partial Stay Would Substantially Prejudice ST in this Litigation and in the Competitive Marketplace**

If granted, the Motion would lead to a tactical advantage for InvenSense that would unduly prejudice ST. This is in part because the re-examination proceedings and the instant Motion taken together comprise a transparent attempt by InvenSense to deprive ST the benefit of its own patent portfolio and pleading allegations—that ST has nine valid patents that are infringed by InvenSense, and that ST should be heard by a jury on those allegations. The ST patents as a whole represent a comprehensive set of inventions that are critical for MEMS motion sensing technology. Separating them from each other (as the Motion would do) therefore distorts and fragments the analysis of their infringement by the integrated products that InvenSense unlawfully offers in the market today. Moreover, the Motion if granted would distort the critical fact that it was ST who was the pioneer in the area of MEMS technology, having spent many millions of dollars over a decade of R&D, all before InvenSense ever filed a patent or built a product.

-10-

1    The Motion would also prejudice ST because it is an obvious attempt to put the parties at

2  some sort of artificial "patent parity" before the jury, as though ST had "only" two relevant

3  patents.  This means that the jury would not have a full picture of InvenSense's infringement,

4  which would be necessary to fully assess the extent of their infringement and ST's damages.

5  *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir. 1996) ("[O]ther

6  manifestations of unethical or injurious commercial conduct may provide grounds for a finding of

7  willful infringement and the enhancement of damages.").  The stay would deny ST its right to

8  have its day in Court on all of its patents, and by multiple years.  *See* Kim Dec., Ex. 1, at 2

9  (showing that the average ex parte re-examination lasts on average 25.4 months).

10          **1.      The case law is clear that competitors—such as ST and InvenSense—**

11                  **are uniquely prejudiced by even a temporary delay in patent litigation**

12          But more than anything, ST will be substantially prejudiced by a partial stay of this case

13  because it is a litigation tactic that—if successful—would prolong InvenSense's ability to compete

14  in the market by using ST's own inventions against ST.  The Federal Circuit has recognized in

15  recent years that parties are increasingly attempting to use a re-examination delay as a tactical

16  weapon in litigation, and it is therefore important to analyze the facts of a particular case to ensure

17  that imposing a stay will not serve that improper purpose.

18          [Reexamination] can be a useful and powerful tool for the benefit of both patentees
            and those interested in restricting or eliminating adversely held patents. However, if
19          routinely available to delay the judicial resolution of disputes, ***the procedure is
            subject to inequity, if not manipulation and abuse, through the delays that are
20          inherent in PTO activity***.

21  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1305 (Fed. Cir. 2009) (J. Newman,

22  concurring) (emphasis added).

23          The Federal Circuit has further recognized the heightened risk that a delay imposed by a

24  pending re-examination will cause undue prejudice when—as is the case between ST and

25  InvenSense—the patentee competes directly in the market with the putative infringer.  In

26  highlighting that risk of undue prejudice, the Circuit has observed that the "essential attribute of a

27  patent grant is that it provides ***a right to exclude competitors from infringing the patent***."

28  *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (emphasis added).

1   Consistent with that essential attribute of a patent grant, the court has also observed that

2   "infringement [during a temporary stay in proceedings] may cause a patentee irreparable harm not

3   remediable by a reasonable royalty." *Id*.

4          Following that Federal Circuit precedent, district courts around the country have given

5   substantial weight to the prejudice suffered by a patentee— in response to a motion to stay a case

6   pending a re-examination—when litigating against a competitor.  That is precisely the case here,

7   where ST and InvenSense make and sell similar products, have each asserted patents on similar

8   subject matter, and are each other's "top competitor" in the marketplace for "motion-sensing

9   devices." *See*, II, *ante*.  Those facts and law weigh heavily against granting any "partial" stay.

10  *See, e.g.*, *Biomet Biologics*, 2011 U.S. Dist. LEXIS 109282, at *7 ("[B]ecause Defendants

11  allegedly continue to infringe upon Plaintiffs' patent in direct competition with Plaintiff, a delay

12  has the potential to cause severe prejudice."); *Avago Techs. Fiber IP (Sing.) Pte Ltd. v. Iptronics*

13  *Inc.*, 2011 U.S. Dist. LEXIS 82665, at *15-17 (N.D. Cal. July 28, 2011) ("Unlike patent

14  infringement actions involving non-practicing entities, infringement among competitors can cause

15  harm in the marketplace that is not compensable by readily calculable money damages.."); *see*

16  *also United Pet Group, Inc. v. MiracleCorp Products*, 2012 U.S. Dist. LEXIS 88926, at *7-8

17  (E.D. Mo. 2012) (finding that a stay would unduly prejudice the plaintiff "as Plaintiff and

18  Defendant are direct competitors"); *Mike's Train House, Inc. v. Broadway Ltd. Imps.*, LLC, 2011

19  U.S. Dist. LEXIS 22224, at *7 (D. Md. Mar. 3, 2011) ("[I]t may sometimes be impossible to

20  restore a patentee's original market share after years of infringement, because customers' business

21  relationships and expectations will have changed."); *Sunbeam Prods. v. Hamilton Beach Brands,*

22  *Inc.*, 2010 U.S. Dist. LEXIS 45654, at *11-13 (E.D. Va. May 7, 2010) ("Both the time that

23  Sunbeam would have to wait to litigate its claims, and the possibility that it could lose market

24  share—potentially permanently—during the stay, weigh against staying the litigation."); *Tesco*

25  *Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) ("Where the parties are

26  direct competitors, a stay would likely prejudice the non-movant.").

27         InvenSense has not and cannot undermine the fact that it is actively competing with ST in

28  the marketplace for the very technologies and products that are at issue in this litigation.  Nor can

InvenSense side-step the case law holding that a stay of proceedings pending a patent re-examination is inappropriate when the litigants are competitors.  InvenSense nonetheless makes a conclusory argument that a partial stay would not prejudice ST because litigation will continue on the other patents.  That argument contradicts any well-grounded understanding of intellectual property and commercial litigation—supposing incorrectly that different patents may be treated with a "six, one half dozen the other" mindset, where a patentee suffers no prejudice by being deprived one patent (for years at a time) so long as the patentee has another (albeit different) patent in its portfolio.

### 2.    InvenSense's case law on "prejudice" is unavailing

When addressing the issue of undue prejudice, InvenSense cites two cases in which courts granted motions for a partial stay.  Those decisions are not on point.  In *Photoflex Prods. v. Circa 3 LLC*, 2006 U.S. Dist. LEXIS 37743 (N.D. Cal. May 24, 2006), a patent claim was stayed while other claims were not.  But the claims that proceeded during the partial stay were not patent claims.  They involved other legal issues such as copyright infringement, and the court specifically noted that there was no showing of any potential overlap between the patent claim and the other claims in the suit.  *Id.* at *6-7.  That is not the case here.

In *Aten Int'l Co. v. Emine Tech. Co.*, litigation on one patent in suit had been ongoing for ***four years***, and the motion to stay concerned re-examination of a patent that had been added to the case only recently.  2010 U.S. Dist. LEXIS 46226, at *21 (C.D. Cal. Apr. 12, 2010).  The question in *Aten*, therefore, was whether litigation on the newly-added patent would be duplicative and unduly burdensome in light of the multi-year discovery and litigation on the pre-existing patent.  *Viz.*, the court in *Aten* sensibly stayed litigation on a patent that was four years "behind" the patents already in suit.  That factual scenario is nothing like this case.  All of ST's nine patents were asserted in the same pleading.  Both of InvenSense's two patents were asserted in the same counter-claim pleading.  All eleven of those patents are identically situated for case management purposes.  Discovery, claim construction, summary judgment, and trial on all eleven patents may and should be coordinated.

**D.     The Stage of Litigation Does Not Weigh in Favor of a Stay**

While ST recognizes this case is not on the eve of trial, it is not accurate to characterize it as being in an "early" stage. The pleadings are settled. A schedule has been ordered. And the parties have already begun fact discovery in earnest. For example, the parties have exchanged responses and objections to each other's first sets of interrogatories and requests for production of documents; have identified individuals who are likely to have relevant information in initial disclosures; and are preparing infringement and invalidity contentions.

Nonetheless, if the Court were to determine that this case is at an "early" stage, that would not weigh in favor of granting a partial stay for a few reasons. <u>First</u>, while the patents asserted by ST and InvenSense vary by the identity of inventors and the specific claim language, they concern the same narrow technical field: MEMS motions sensor devices. The alleged infringing products on both sides are competitive products within the same MEMS motion sensor market. Therefore, even if the case were considered to be at an "early" stage, that does not suggest that a stay is appropriate. That suggests that the parties and the Court can and should continue to plan discovery and further litigation progress—such as claim construction—to maximize efficiency and judicial economy across all the overlapping patented technologies and accused products at issue in the case. By disrupting the case at this stage, a grant of InvenSense's Motion would thwart that opportunity for judicial economy, and delay litigation of overlapping issues and facts for an indefinite period of time.

<u>Second</u>, the limited extent to which courts have exhibited a liberal policy in granting stays at early stages of other patent litigations is generally a function of the extent to which the USPTO re-examination has the potential to simplify the issues in the case. In particular, stays are liberally granted where the outcome of a re-examination could necessarily impact the *entire* case. *See, e.g.*, *Convergence Techs. (USA), LLC v. Microloops Corp.*, 2012 U.S. Dist. LEXIS 51794, at *9 (N.D. Cal. Apr. 12, 2012) ("It is notable that *all* of the claims asserted by Plaintiff in this litigation are subject to reexamination."); *Kla-Tencor Corp. v. Nanometrics, Inc.*, 2006 U.S. Dist. LEXIS 15754, at *10-13 (N.D. Cal. Mar. 16, 2006) (granting a stay where re-examination was requested for all three patents in the suit). Indeed, in many cases in which the court ordered a stay based on

1   a re-examination—including cases InvenSense cited in its Motion papers—there was only a single

2   patent in dispute. *See Sorensen v. Digital Networks N. Am., Inc.*, 2008 U.S. Dist. LEXIS 6454, *2

3   (N.D. Cal. Jan. 16, 2008); *Akeena Solar Inc. v. Zep Solar Inc.*, 2010 U.S. Dist. LEXIS 47909, at

4   *10 (N.D. Cal. Apr. 14, 2010); *IpVenture, Inc. v. FedEx Corp.*, 2012 U.S. Dist. LEXIS 55962, at

5   *4 (N.D. Cal. Apr. 20, 2012).

6         That is not the case here.  InvenSense has not requested re-examination for all nine of ST's

7   asserted patents, and InvenSense does not even purport to seek a stay of the case in its entirety.

8   InvenSense proposes instead to proceed with Non-Stayed Patents right now, and later to address

9   all or some mix of the seven challenged ST patents at some unspecified date after re-examination.

10  That scenario does not suggest efficiency, nor support a stay.  And citing an "early" stage of

11  litigation will not change that analysis. *See Network Appliance, Inc. v. Sun Microsystems, Inc.*,

12  2008 U.S. Dist. LEXIS 76717, at *9-10 (N.D. Cal. May 23, 2008) (denying a motion for a partial

13  stay despite the "early stage of litigation" where the putative infringer had requested re-

14  examination on some, but not all, asserted patents; s*ee also Largan Precision Co. v. Fujifilm

15  Corp.*, 2011 U.S. Dist. LEXIS 25423, at *12 (N.D. Cal. Mar. 1, 2011).  ("[I]ssuing a partial stay

16  would likely result in greater costs and delay by requiring Defendant to proceed with two separate

17  patent litigations in this Court, involving overlapping issues and evidence."); *Broadcom Corp. v.

18  SiRF Tech., Inc.*, 2009 U.S. Dist. LEXIS 131888, at *7 (C.D. Cal. July 20, 2009) (suggesting that

19  a partial stay on two of four patents "may well be inefficient").

20  **IV.**    **CONCLUSION**

21        For all of these reasons, ST respectfully requests that the Court deny InvenSense's Motion

22  to Partially Stay Proceedings pending the PTO's *ex parte* reexamination on certain of ST's

23  patents.

24  DATED:  October 10, 2012           Respectfully submitted,

25                      QUINN EMANUEL URQUHART &

26                      SULLIVAN, LLP

27                      By   *s/ Sean S. Pak*

28                      Sean S. Pak
                      Email: seanpak@quinnemanuel.com