| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>  Charles K. Verhoeven (Bar No. 170151)<br>  charlesverhoeven@quinnemanuel.com<br>  Sean Pak (Bar No. 219032)<br>  seanpak@quinnemanuel.com<br>  Michelle A. Clark (Bar No. 243777)<br>  michelleclark@quinnemanuel.com<br>  Lance Yang (Admitted *Pro Hac Vice*)<br>  lanceyang@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, California  94111-4788<br>Telephone:     (415) 875-6600<br><br>  Michael Powell (Bar No. 202850)<br>  mikepowell@quinnemanuel.com<br>  Suong T. Nguyen (Bar No. 237557)<br>  suongnguyen@quinnemanuel.com<br>  Charles P. Emanuel (Bar No. 256671)<br>  chipemanuel@quinnemanuel.com<br>555 Twin Dolphin Drive, Fifth Floor<br>Redwood Shores, CA 94065<br>Telephone:     (650) 801-5000<br><br>  Thomas D. Pease (Admitted *Pro Hac Vice*)<br>  thomaspease@quinnemanuel.com<br>  Carlos A. Rodriguez (Admitted *Pro Hac Vice*)<br>  carlosrodriguez@quinnemanuel.com<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone:     (212) 849-7000<br><br>Attorneys for Plaintiff STMicroelectronics, Inc. | MORRISON FOERSTER LLP<br>  RACHEL KREVANS (CA SBN 116421)<br>  RKrevans@mofo.com<br>  ESTHER KIM (CA SBN 258024)<br>  EKim@mofo.com<br>  425 Market Street<br>  San Francisco, CA 94105<br>  Telephone:   (415) 268-7000<br><br>  RUDY Y. KIM (CA SBN 199426)<br>  RudyKim@mofo.com<br>  755 Page Mill Road<br>  Palo Alto, CA 94304<br>  Telephone:   650.813.5600<br><br>TUCROY & WATSON LLP<br>  Vinay Vijay Joshi (CA SBN 213487)<br>  vjoshi@thepatentattorneys.com<br>  560 S Winchester Blvd Suite 500<br>  San Jose, CA 95128<br>  Telephone:   (408) 893-1512<br><br>Attorneys for Defendant InvenSense, Inc. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STMICROELECTRONICS, INC.,<br><br>           Plaintiff,<br><br>      vs.<br><br>INVENSENSE, INC.,<br><br>           Defendant. | CASE NO. 12-CV-2475-JSW<br><br>**JOINT CLAIM CONSTRUCTION AND PREHEARING STATEMENT**<br><br>**[PATENT L.R. 4-3]** |

04395.52011/5173050.1

Pursuant to the Court's Case Management Order and Patent Local Rule 4-3, Plaintiff STMicroelectronics, Inc. ("ST") and Defendant InvenSense, Inc. ("InvenSense") respectfully provide the following Joint Claim Construction and Prehearing Statement with respect to United States Patent Nos. 5,874,850 ("'850 Patent"), 6,405,592 ("'592 Patent"), 6,504,253 ("'253 Patent"), 6,546,799 ("'799 Patent"), 6,928,872 ("'872 Patent"), 7,409,291 ("'291 Patent"), 7,450,332 ("'332 Patent"), 7,485,263 ("'263 Patent"), and 7,290,435 ("'435 Patent").

Any agreed constructions are set forth below in Section II. The proposed constructions of the ten disputed terms, phrases, and clauses (collectively, "terms"), together with an identification of the references from the specifications of the patents-in-suit and prosecution history that support that construction, and an identification of any extrinsic evidence currently known to the party on which it intends to rely, is set forth in Section III.

Pursuant to the Court's Standing Order for Patent Cases, copies of the '850, '592, '253, '799, '872, '291, '332, '263, and '435 Patents are attached hereto as Exhibits A, B, C, D, E, F, G, H, and I, respectively. A copy of the file histories will be made available to the Court upon the Court's request.

## I. RESERVATION OF RIGHTS REGARDING PROPOSED CLAIM CONSTRUCTIONS

Discovery related to claim construction matters is ongoing and not scheduled to close until March 15, 2013. *See* Further Amended Joint Case Management Statement (ECF No. 43) at 10. The constructions proposed herein are based on the positions taken by the parties to date and the information reasonably available to them at this stage of discovery.

The parties have thus far only produced documents pursuant to the Patent Local Rules, relating to the parties infringement contentions, invalidity contentions, and claim construction positions. The parties are in the process of collecting and reviewing document in preparation for production. Additionally, on February 1, 2013, ST noticed the depositions of Steven S. Nasiri, Joseph Seeger, Martin Lim, Anthony Francis Flannery, Jr., Alexander Castro, Ali Rastegar, and Milton T. Tormey. ST also plans to subpoena Joseph Sawyer and Kelvin Vivian (named

inventors and/or prosecuting attorneys of the '263 and '435 Patents). ST intends to take these depositions related to claim construction prior to the claim construction discovery cut-off.

Consistent with the Court's Standing Order for Patent Cases, should it become necessary for either party to propose a different construction in its claim construction brief(s) than that found in the joint claim construction statement, that party must clearly set forth the new construction and explain the basis for the change. Additionally, that party shall revise the joint claim construction statement, so that the Court will have one document reflecting all current proposed constructions. In addition, at the time of filing the reply briefs, the parties shall file an amended, final joint claim construction statement, including only the remaining disputed terms, phrases, and clauses.

## II. THE CONSTRUCTION OF TERMS ON WHICH THE PARTIES AGREE (PATENT L.R. 4-3(a))

At this time, there are no claim terms on which the parties have reached an agreed-upon construction pursuant to Patent L.R. 4-3(a).

## III. PROPOSED CONSTRUCTIONS OF THE PARTIES' 10 DISPUTED TERMS (PATENT L.R. 4-3(b) AND (c)

Pursuant to Patent Local Rules 4-3(b) and (c) and the Court's Standing Order for Patent Cases, the following chart sets forth the parties' ten disputed claim terms, along with each party's proposed constructions and intrinsic and extrinsic evidence on which the parties intend to rely. ST believes that the construction of the terms marked with an asterisk (*) may be case or claim dispositive. InvenSense believes that the construction of the terms marked with double asterisks (**) may be case or claim dispositive.

The declarations of Dr. Thomas W. Kenny, Dr. John C. Bravman, and Dr. R. Jacob Baker Regarding Claim Construction upon which InvenSense intends to rely are attached as Exhibits J, K, and L, respectively.

| Claim Term | ST's Proposed Construction and Evidence in Support | InvenSense's Proposed Construction and Evidence in Support |
|---|---|---|
| 1. "**a first processing stage structured to process said first signal and supply a second signal correlated to a dynamic component of said first signal wherein said first processing stage comprises a filter, supplying a third signal correlated to a static component of said first signal, and a subtractor element, for subtracting said third signal from said first signal**"\*\*<br><br>('291 Patent, claim 1)<br><br>"**processing the first signal and supplying a second signal correlated to a dynamic component of the first signal wherein the processing comprises filtering the first signal to create a third signal correlated to a static component of the first signal, and subtracting the third signal from the first signal to create the second signal**"\*\*<br><br>('291 Patent, claim 19) | **PROPOSED CONSTRUCTION:** Plain meaning. | **PROPOSED CONSTRUCTION:** "a first processing stage structured to process said first signal and supply a second signal correlated to a component of said first signal measuring dynamic accelerations wherein said first processing stage comprises a low-pass filter supplying a third signal correlated to a component of the first signal measuring static accelerations, and a subtractor element, for subtracting said third signal from said first signal"/"processing the first signal and supplying a second signal correlated to a component of the first signal measuring dynamic accelerations wherein the processing comprises low-pass filtering the first signal to create a third signal correlated to a component of the first signal measuring static accelerations, and subtracting the third signal from the first signal to create the second signal"<br><br>**INTRINSIC EVIDENCE:** '291 Patent at claims 1, 12, 19, 25, 27; 2:66-3:26; 4:31-5:48; Figs. 1-3.<br><br>'291 Patent File History at April 30, 2007 Office Action; July 30, 2007 Response to Office Action; February 1, 2008 Response to Office Action.<br><br>**EXTRINSIC EVIDENCE:** Declaration of Dr. R. Jacob Baker Regarding Claim Construction (attached as Exhibit L). |

| Claim Term | ST's Proposed Construction and Evidence in Support | InvenSense's Proposed Construction and Evidence in Support |
|---|---|---|
| 2. "controlled so as to compensate a **position offset** of the rotor element"** <br><br> ('799 Patent, claims 1, [20]) | **PROPOSED CONSTRUCTION:** "**position offset**": "the effective zero position of the rotor that does not coincide with the nominal zero position envisaged in the design phase" <br><br> **INTRINSIC EVIDENCE:** '799 Patent at 2:1-7; 2:8-14; 2:36-46; 3:47-54; 4:20-30; 4:43-47; 5:10-25; 5:26-34; 6:6-11. <br><br> **EXTRINSIC EVIDENCE:** N/A. | **PROPOSED CONSTRUCTION:** "**controlled so as to compensate a position offset of the rotor element**": "controlled so as to move the rotor element into the nominal (intended) zero position" <br><br> **INTRINSIC EVIDENCE:** '799 Patent at claims 1, 13, 14, 16-25; Abstract; 1:8-3:20; 3:43-5:62; 6:6-12; Figs. 1-4. <br><br> **EXTRINSIC EVIDENCE:** Declaration of Dr. Thomas W. Kenny Regarding Claim Construction (attached as Exhibit J). |
| 3. "**configured to adjust positions of the stator and the rotor relative to one another in response to a driving signal**"** <br><br> ('799 Patent, claim 19) | **PROPOSED CONSTRUCTION:** Plain meaning. | **PROPOSED CONSTRUCTION:** "configured to move the rotor relative to the stator in response to a signal indicating the difference between the effective (actual) zero position of the rotor and the nominal (intended) zero position" <br><br> **INTRINSIC EVIDENCE:** '799 Patent at claims 1, 13, 14, 16-25; Abstract; 1:8-3:20; 3:43-5:62; 6:6-12; Figs. 1-4. <br><br> **EXTRINSIC EVIDENCE:** Declaration of Dr. Thomas W. Kenny Regarding Claim Construction (attached as Exhibit J). |

| Claim Term | ST's Proposed Construction and Evidence in Support | InvenSense's Proposed Construction and Evidence in Support |
|---|---|---|
| 4. **"driving assembly"** / **"driving assemblies"**\*\*<br><br>('872 Patent, claims 1, 3, 16, 17) | **PROPOSED CONSTRUCTION:** Plain meaning. | **PROPOSED CONSTRUCTION:** "a structure that consists of: (1) an oscillating element that houses the sensitive mass (*i.e.*, a driving element); (2) movable driving arms extending from the oscillating element carrying movable driving electrodes; and (3) fixed driving arms parallel to the movable driving arms carrying fixed driving electrodes"<br><br>**INTRINSIC EVIDENCE:** '872 Patent at claims 1, 3, 7, 10, 14, 16-18, 23-25, 27; Abstract, 2:15-49; 3:12-36; 3:51-5:9; 5:50-67; 6:37-64; 7:62-8:26; Figs. 1, 2, 5, 7.<br><br>'872 Patent File History at April 23, 2004 Office Action; July 17, 2004 Response to Office Action; March 7, 2005 Notice of Allowability.<br><br>**EXTRINSIC EVIDENCE:** Declaration of Dr. Thomas W. Kenny Regarding Claim Construction (attached as Exhibit J). |

| Claim Term | ST's Proposed Construction and Evidence in Support | InvenSense's Proposed Construction and Evidence in Support |
|---|---|---|
| 5. "**sensitive mass extending in a first direction and [a/the] second direction**"\*\*<br><br>('872 Patent, claims 1, 3, 17) | **PROPOSED CONSTRUCTION:** Plain meaning. | **PROPOSED CONSTRUCTION:** "sensitive mass of a planar shape that extends mainly in a first direction and a second direction"<br><br>**INTRINSIC EVIDENCE:** '872 Patent at claims 1-3, 5, 6, 17; 2:15-37; 3:12-4:5; 4:58-5:49; 6:1-7:25; 8:14-9:58; Figs. 1-3, 5, 7-9.<br><br>**EXTRINSIC EVIDENCE:** Declaration of Dr. Thomas W. Kenny Regarding Claim Construction (attached as Exhibit J). |
| 6. "**an insulation region surrounding laterally said plug region**"\*\*<br><br>('253 Patent, claim 1)<br><br>"**an insulation region laterally surrounding said plug region**"\*\*<br><br>('253 Patent, claim 17) | **PROPOSED CONSTRUCTION:** Plain meaning. | **PROPOSED CONSTRUCTION:** "a space adjacent the sides of the plug region filled with a material that electrically insulates the plug region from the rest of the second body"<br><br>**INTRINSIC EVIDENCE:** '253 Patent at claims 1, 7, 11, 14, 17, 25, 26; Abstract; 1:56-65; 2:58-67; 4:9-15; 4:64-66; 5:27-32; 5:63-65; 6:64-66; Figs. 1-19.<br><br>**EXTRINSIC EVIDENCE:** Declaration of Dr. John C. Bravman Regarding Claim Construction (attached as Exhibit K). |

| Claim Term | ST's Proposed Construction and Evidence in Support | InvenSense's Proposed Construction and Evidence in Support |
|---|---|---|
| 7. "**subsensor**"*<br><br>"**a first subsensor**", "**a second subsensor**"<br><br>('263 Patent, claims 1, 5, 9, 14, 15, 26) | **PROPOSED CONSTRUCTION:** "first subsensor distinct and separate from the second subsensor", "second subsensor distinct and separate from the first subsensor"<br><br>**INTRINSIC EVIDENCE:** '263 Patent at 3:29-38; 3:39-3:53; 4:31-36;17:30-50; 17:51-64; Figs. 13, 17.<br><br>'263 Patent File History, 11/19/07 Resp. to OA at 12-13 ("The Examiner recognizes that Tamura fails to disclose a second angular velocity sensor (as required by the claims), however, the Examiner asserts that it would have been obvious to one of skill in the art to employ an angular velocity sensor as disclosed in MacGugan in place of the acceleration sensor in Tamura."); 11/19/07 Resp. to OA at 13 ("even assuming that one of skill in the art would have been motivated to replace the acceleration sensor in Tamura with an angular velocity sensor as disclosed in MacGugan (which Applicant does not concede), the two angular sensors would be separately sealed in two different environments. In contrast, claim 1 requires that both the first subsensor and the second subsensor be <u>contained together within a single hermetic seal</u>.") (emphasis in original).<br><br>**EXTRINSIC EVIDENCE:** N/A. | **PROPOSED CONSTRUCTION:** "a subpart of the dual-axis sensor including two masses disposed in the X-Y plane driven to oscillate in opposite directions along a single axis"<br><br>**INTRINSIC EVIDENCE:** '263 Patent at claims 1, 5, 9, 14, 15, 26; 2:40-67; 3:3-7; 3:29-38; 5:12-13; 5:53-62; 6:65-7:7; 10:62-11:6; 17:30-50; Figs. 1, 2, 11a, 11b, 13, 14a, 14b, 17.<br><br>'263 Patent File History at November 19, 2007 Supplemental Amendment in Reply to Action of May 16, 2007.<br><br>**EXTRINSIC EVIDENCE:** Declaration of Dr. Thomas W. Kenny Regarding Claim Construction (attached as Exhibit J). |

| Claim Term | ST's Proposed Construction and Evidence in Support | InvenSense's Proposed Construction and Evidence in Support |
|---|---|---|
| 8. "**membrane**"*<br><br>('263 Patent, claims 5, 6, 9) | **PROPOSED CONSTRUCTION:** "thin pliable sheet of material"<br><br>**DICTIONARY/TREATISE DEFINITIONS:** Random House Webster's Dictionary (4th ed. 2001) (ST00010829 *et seq.*), at p. 450 (ST00010835) (defining "membrane") ("a thin, pliable sheet or layer of animal or vegetable tissue").<br><br>Dictionary.com at http://dictionary.reference.com/browse/membrane (ST00010817 *et seq.*) (World English Dictionary defining "membrane") ("1. any thin pliable sheet of material").<br><br>Beeby, S. et al., MEMS Mechanical Sensors (2004) (ST00010807 *et seq.*), at pp. 127 (ST00010810) ("Membranes can be considered as very thin diaphragms with large deflection *(yo lh* >5) [3]. In theory, a membrane has no flexural rigidity and experiences tensile stress, but no bending stress. The characteristic equation for a membrane is given by [4] …").<br><br>**INTRINSIC EVIDENCE:** '263 Patent at 3:48-53; 14:30-37; 14:38-46; Figs. 8b, 18a, 18b.<br><br>**EXTRINSIC EVIDENCE:** N/A. | **PROPOSED CONSTRUCTION:** Plain meaning.<br><br>Alternative: "a portion of a wafer over a rectangular cavity of the dual-axis sensor"<br><br>**INTRINSIC EVIDENCE:** '263 Patent at claims 5, 6, 9; 5:45-48; 14:7-12; 14:20-33; 14:38-46; 15:16-30; Figs. 8a, 8b, 18a.<br><br>**EXTRINSIC EVIDENCE:** Declaration of Dr. Thomas W. Kenny Regarding Claim Construction (attached as Exhibit J). |
| 9. "**constrains the first and second masses [or the third and fourth masses] to move in opposite directions perpendicular to the XY sensor plane**"* | **PROPOSED CONSTRUCTION:** "limits the first and second masses [or the third and fourth masses] to movement only in opposite directions perpendicular to the | **PROPOSED CONSTRUCTION:** Plain meaning.<br><br>**INTRINSIC EVIDENCE:** '263 Patent at claim 15; 1:31-47; 2:9-54; 5:57-62; 6:6-20; |

-8-    Case No. 12-CV-2475-JSW
JOINT CLAIM CONSTRUCTION STATEMENT

| Claim Term | ST's Proposed Construction and Evidence in Support | InvenSense's Proposed Construction and Evidence in Support |
|---|---|---|
| ('263 Patent, claim 15) | X-Y sensor plane"<br><br>**DICTIONARY/TREATISE DEFINITIONS:** Random House Webster's Dictionary (4th ed. 2001) (ST00010829 *et seq.*), at p. 152 (ST00010832) (defining "constrain") ("1. to compel. 2. to confine. 3. to repress or restrain.").<br><br>Dictionary.com at http://dictionary.reference.com/browse/constrain (ST00010812 *et seq.*) (defining "constrain") ("1. to force, compel, or oblige: *He was constrained to admit the offense.* 2. to confine forcibly, as by bonds. 3. to repress or restrain: *Cold weather constrained the plant's growth.*").<br><br>IEEE 100 The Authoritative Dictionary of IEEE Standards Terms (7th ed. 2000) (ST00010819 *et seq.*), at p. 224 (ST00010823) (defining "constraint") ("(2) A limitation or implied requirement that constrain the design solution or implementation of the systems engineering process, is not changeable by the enterprise, and is generally nonallocable. … (3) An externally imposed limitation on system requirements, design, or implementation or on the process used to develop or modify a system. … (4) A statement that expresses measurable bounds for an element or function of the system. That is, a constraint is a factor that is imposed on the solution by force or compulsion and may limit or modify the design changes:"); *id*. (defining | 6:31-39; 6:55-7:10; 9:51-10:3; 10:62-11:6; 12:40-49; 17:65-18:31; 18:54-19:3; Figs. 1, 2, 11a, 11b, 14a, 14b, 15.<br><br>**EXTRINSIC EVIDENCE:** Declaration of Dr. Thomas W. Kenny Regarding Claim Construction (attached as Exhibit J). |

| Claim Term | ST's Proposed Construction and Evidence in Support | InvenSense's Proposed Construction and Evidence in Support |
|---|---|---|
| | "constraints") ("constraints (1) Limits on the ranges of variables or system parameters because of physical or system requirements. ... (2) A restriction placed on the control signal, control law, or state variables. *See.also:* control system. … (3) Conditions and/or resource requirement limitations affecting the process. … (4) Restrictions, resources, rules, etc., that limit Software Life Cycle Model selection, project planning, and management."). **INTRINSIC EVIDENCE:** '263 Patent at 2:40-67; 3:3-7; 5:53-62; 6:65-7:10; Figs. 1, 2. **EXTRINSIC EVIDENCE:** N/A. | |

| Claim Term | ST's Proposed Construction and Evidence in Support | InvenSense's Proposed Construction and Evidence in Support |
|---|---|---|
| 10. "**a pre-determined frequency**"*<br><br>('435 Patent, claims 1, 9) | **PROPOSED CONSTRUCTION:** "frequency at which a proof mass is vibrated, determined prior to vibration of the proof mass"<br><br>**DICTIONARY/TREATISE DEFINITIONS:** IEEE 100 The Authoritative Dictionary of IEEE Standards Terms (7th ed. 2000) (ST00010819 *et seq.*), at p. 458 (ST00010827) (defining "frequency") ("(2) (periodic function) (data transmission) (Wherein time is the independent variable) a) (general). The number of periods per unit time.").<br><br>**INTRINSIC EVIDENCE:** '435 Patent at 2:43-46; 3:17-22; 4:60-62; 5:38-41; 6:4-6.<br><br>Random House Webster's Dictionary (4th ed. 2001) (ST00010829 *et seq.*), at p. 287 (ST00010834) (defining "frequency") ("1. the state or fact of being frequent. 2. rate of occurrence. 3. *Physics.* the number of cycles or completed alternations per unit time of a wave or oscillation"); *id.* at 565 (ST00010836) (defining "predetermine[d]") ("**1.** To decide in advance. **2.** To ordain in advance; predestine.").<br><br>**EXTRINSIC EVIDENCE:** N/A. | **PROPOSED CONSTRUCTION:** Plain meaning.<br><br>**INTRINSIC EVIDENCE:** '435 Patent at claims 1, 9; 1:21-23; 4:46-54; 4:60-64.<br><br>**EXTRINSIC EVIDENCE:** Declaration of Dr. Thomas W. Kenny Regarding Claim Construction (attached as Exhibit J).<br><br>U.S. Patent No. 6,892,575 at 8:25-49. |

IV.     **ANTICIPATED LENGTH OF TIME NECESSARY FOR THE CLAIM CONSTRUCTION HEARING (PATENT L.R. 4-3(d))**

In its September 17, 2012 Order (D.I. 44), the Court scheduled a Claim Construction Tutorial for May 22, 2013, and a Claim Construction Hearing for May 29, 2013. The parties

indicated in their joint case management conference statement that they believed each side should be provided 60 minutes at the tutorial and two hours at the claim construction hearing. The tutorial presentation may be by counsel and/or by the parties' respective retained experts, or in whatever format the Court prescribes. The parties agree that, unless the Court prescribes a format for the presentations at the Claim Construction Hearing and technology tutorial, the parties shall meet and confer no later than 30 days prior to the Claim Construction Hearing to discuss and finalize how they will make their presentations.

V.    **IDENTIFICATION OF LIVE WITNESSES (Patent L.R. 4-3(e))**

Each party anticipates using one or more experts to present at the technology tutorial on May 22, 2013. Neither party intends to rely on live expert testimony at the Claim Construction Hearing on May 29, 2013.

At the technology tutorial, InvenSense may offer opinions from Dr. Thomas W. Kenny, Dr. John C. Bravman, and Dr. R. Jacob Baker. A description of their background and their Curriculum Vitae are attached as Exhibits J, K, and L, respectively. Dr. Thomas W. Kenny may provide opinions regarding the disputed claim terms in the '263, '435, 799, '872, and '332 patents, the definition of one of ordinary skill in the art, the state of relevant technology at the time the patents were filed, and rebuttal opinions to constructions offered by ST on the '263, '435, 799, '872, and '332 patents or any expert ST may use. Dr. John C. Bravman may provide opinions regarding the disputed claim terms in the '253 patent, the definition of one of ordinary skill in the art, the state of relevant technology at the time the patents were filed, and rebuttal opinions to constructions offered by ST on the '253 patent or any expert ST may use. Dr. R. Jacob Baker may provide opinions regarding the disputed claim terms in the '291 patent, the definition of one of ordinary skill in the art, the state of relevant technology at the time the patents were filed, and rebuttal opinions to constructions offered by ST on the '291 patent or any expert ST may use.

## VI. DISCLOSURE OF PERCIPIENT AND EXPERT WITNESSES

### A. ST's Position

In accordance with the Court's Case Management Order and pursuant to Patent Local Rules 4-2 and 4-3, ST respectfully submits the following disclosure of percipient and expert witnesses for claim construction designated in rebuttal to the percipient and expert witnesses disclosed by InvenSense, pursuant to Patent L.R. 4-2, in its Preliminary Claim Constructions and Extrinsic Evidence. Nothing in this designation is intended to or should be construed as a waiver of any of ST's arguments or right to seek to strike InvenSense's expert witness disclosure or for other relief. ST has contended and continues to maintain that InvenSense's expert disclosure and its proposed reliance on expert testimony in support of its proffered claim constructions is improper, its Patent Local Rule 4-2 and 4-3 expert disclosures should be stricken, and it should be precluded from offering expert evidence in support of its claim construction positions.[1]

ST may rely on testimony from one or more of the following experts in support of its proposed claim constructions: Dr. Farrokh Ayazi, Dr. Paul Min, Dr. Dean Neikirk, and Dr. Stefan Wurster. Dr. Min may opine regarding the meaning of terms and phrases in at least the asserted claims of the '799, '850, '861, and/or '253 Patents, including an explanation of how ST's proposed constructions are, and/or how InvenSense's proposed constructions are not, supported by intrinsic evidence, extrinsic evidence, and/or the education and experience of a person of ordinary skill in the art relevant to the '799, '850, '861, and '253 Patents. Dr. Ayazi may opine regarding the meaning of terms and phrases in at least the asserted claims of the '872 patent, '253, '690, '592, '799, '291, '850, and/or '861 Patents including an explanation of how ST's proposed constructions are, and/or how InvenSense's proposed constructions are not, supported by intrinsic evidence, extrinsic evidence, and/or the education and experience of a person of ordinary skill in the art relevant to the '872, '253, 690, '592, '799, '291, '850, and '861 Patents. Dr. Neikirk may opine regarding the meaning of terms and phrases in at least the

---

[1] Alternatively, ST maintains that it should be entitled to take early discovery including depositions of INV's experts and may propound its rebuttal expert reports within 14 days of receipt of INV's expert reports.

asserted claims of the '291, '592, '253, '690, '799, '872, '291, an/or '332 Patents including an explanation of how ST's proposed constructions are, and/or how InvenSense's proposed constructions are not, supported by intrinsic evidence, extrinsic evidence, and/or the education and experience of a person of ordinary skill in the art relevant to the '291, '592, '253, '690, '799, '872, and '332 Patents. Dr. Wurster may opine regarding the meaning of terms and phrases in at least the asserted claims of InvenSense's '263 and '435 Patents including an explanation of how ST's proposed constructions are, and/or how InvenSense's proposed constructions are not, supported by intrinsic evidence, extrinsic evidence, and/or the education and experience of a person of ordinary skill in the art relevant to the '263 and '435 Patents.

ST's experts may also provide a response to any other opinions and bases therefore presented by any of InvenSense's experts. ST's experts may also respond to any additional background or context regarding the technology at issue, including the level of ordinary skill in the art, provided by any of InvenSense's experts. ST reserves the right to rely on any testimony or opinions provided by any of InvenSense's experts.

In addition, one or more of ST's above-disclosed experts may present at the claim construction technology tutorial scheduled for May 22, 2013. Subject to InvenSense's proposed constructions, information learned in the course of meeting and conferring with InvenSense's counsel, and the manner in which the Court will conduct the technology tutorial and claim construction hearing, ST may rely on testimony from one or more experts to provide background regarding the technology at issue in any patents that will be addressed at the claim construction hearing, to address the meaning and subject matter of the asserted patent claims as they would be understood by those of ordinary skill in the art at the time any patents were filed, to address the proper construction of various claim terms in light of the intrinsic and extrinsic evidence, and to otherwise assist the Court in construing the asserted patents. Any expert witnesses that ST may use in rebuttal to the experts identified by InvenSense may also offer testimony, if necessary, to respond to InvenSense's constructions or expert(s), or for the Court's benefit.

1  ST disagrees that InvenSense is entitled to receive rebuttal expert declarations in advance
2  of claim construction briefing but is willing to meet and confer on this issue following its review
3  of InvenSense's expert declarations, which were not provided in advance of submitting the
4  present Statement.
5  ST intends to take the depositions of the seven inventors and the two prosecuting
6  attorneys for the two InvenSense counterclaim patents and may present testimony from those
7  depositions in support of its proposed constructions or in rebuttal to the constructions and
8  evidence presented by InvenSense. ST also intends to take the deposition of any expert witness
9  whose opinions InvenSense presents in support of any of its claim construction positions and
10 may present testimony from those depositions in support of its proposed constructions or in
11 rebuttal to the constructions and evidence presented by InvenSense.

12   **B.   InvenSense's Position**

13 InvenSense has properly and timely disclosed its expert witnesses for claim construction
14 purposes. In the Further Amended Case Management Statement, the parties explicitly
15 "reserve[d] the right to rely upon experts" and further agreed that expert disclosures for claim
16 construction purposes would be made pursuant to Patent L.R. 4-2 and 4-3. (ECF No. 43.)
17 Pursuant to the Patent Local Rules, InvenSense provided "a description of the substance of that
18 witness' proposed testimony that includes a listing of any opinions to be rendered in connection
19 with claim construction" for the experts on which it intended to rely, with its Patent L.R. 4-2
20 disclosure. (*See* Ex. M.) And pursuant to Patent L.R. 4-3(b), InvenSense now includes an
21 identification of the expert witnesses on which it intends to rely to support its proposed
22 constructions or to oppose ST's proposed constructions, as well as "testimony of [its] expert
23 witnesses." (See *supra* Section III; Exs. J, K, and L.) In addition, InvenSense believes that ST
24 should propound its rebuttal expert opinions no later than 10 days after receipt of InvenSense's
25 expert declarations, submitted herewith. (*See* Exs. J, K, and L.)
26 InvenSense reserves the right to take the depositions of the inventors and prosecuting
27 attorneys for the nine ST asserted patents and may present testimony from those depositions in
28

support of its proposed constructions or in rebuttal to the constructions and evidence presented by ST. InvenSense also reserves the right to take the deposition of any expert witness whose opinions ST presents in support of any of its claim construction positions and may present testimony from those depositions in support of its proposed constructions or in rebuttal to the constructions and evidence presented by ST.

### VII. STATEMENT REGARDING PROPOSED ADDITIONAL TERMS FOR CONSTRUCTION

#### A. InvenSense's Position

ST does not join in Section VII.A. of this Statement. The parties disagree as to the number of terms that need to be construed. The parties collectively identified 142 potential terms for construction in their Patent L.R. 4-1 disclosures. Subsequently, the parties attempted to narrow the terms to be construed by grouping related terms, dropping others, and focusing on terms that cut across different claims or that could be outcome-determinative. By doing so, the parties reduced the number of terms to be construed to 26 terms and exchanged constructions for those terms on January 18, 2013, in their Patent L.R. 4-2 disclosures. Of the remaining 26 terms, InvenSense believes that seven of the terms could be further grouped into three sets, leaving 22 additional terms that InvenSense believes should be construed. Accordingly, on January 30, 2013, InvenSense requested leave of the Court to construe an additional 12 terms. (ECF No. 65.) As reflected in this Joint Claim Construction Statement, ST has agreed to some of these groupings (*see* Section III of Joint Claim Construction Statement). ST, however, has not agreed to all of InvenSense's proposed groupings. As a result, in addition to the ten terms identified in the parties' Patent L.R. 4-3 Joint Claim Construction Statement, there are 13 proposed additional terms that InvenSense has identified for construction (subject to leave from the Court). In an effort to further narrow issues, should the Court grant InvenSense's request for leave to designate additional terms for construction, InvenSense is amenable to dropping one of those 13 additional terms (*viz.*, "filter" from the '291 patent),. For the Court's convenience, and in the event that the Court should grant leave to designate additional terms for construction,

InvenSense includes proposed constructions for the additional terms, as set forth in Exhibit N. These constructions are further supported by the declarations of Dr. Thomas W. Kenny, Dr. John C. Bravman, and Dr. R. Jacob Baker Regarding Claim Construction, attached as Exhibits J, K, and L, respectively.

### B. ST's Position

InvenSense does not join in Section VII.B. of this Statement. ST's position is that this Section VII statement regarding proposed additional terms for construction should not be included in the Patent L.R. 4-3 Statement because the Court has not granted leave to construe any additional terms beyond the terms set forth in Section III, *supra*. Because InvenSense insisted on including the statement regarding additional terms for construction here, ST responds as follows: InvenSense is seeking to construe 15 additional terms for construction. InvenSense originally identified 140 potential terms for construction versus 10 potential terms for construction identified by ST in their Patent L.R. 4-1 disclosures, respectively. The parties have subsequently met and conferred and each identified five terms that it believes are the most significant terms to be construed, as set forth in Section III, *supra*. However, notwithstanding InvenSense's attempts to narrow its additional terms by grouping unrelated terms into "sets," to which ST objects, InvenSense (by ST's count) is still seeking to construe 20 total terms, or 15 terms *more than* the maximum number allowed under the Court's Standing Order for Patent Cases and the Patent Local Rules, absent leave of the Court. ST opposes InvenSense's requested leave of the Court to construe additional terms. ST further objects to InvenSense's identification of proposed constructions for additional terms set forth in Exhibit and to InvenSense's inclusion of expert testimony as to those additional terms. ST objects to InvenSense's identification, without leave of Court, of evidence supporting its proposed constructions that was not previously identified its Patent L.R. 4-2 disclosure. Should the Court grant InvenSense's requested leave to construe additional terms, ST reserves the right to propose constructions and supporting evidence for any additional terms and to offer any expert or percipient testimony or other evidence

necessary to rebut evidence offered by InvenSense to support its proposed constructions for such additional terms.

DATED: February 13, 2013           QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                   By */s/ Michael D. Powell*
                                      Michael D. Powell
                                      Email: michaelpowell@quinnemanuel.com

                                      Attorneys for Plaintiff STMicroelectronics, Inc.

DATED: February 13, 2013           MORRISON FOERSTER LLP


                                   By */s/ Rudy Y. Kim*
                                      Rudy Y. Kim
                                      Email: rudykim@mofo.com

                                      Attorneys for Defendant InvenSense, Inc.


**CIVIL L. R. 5-1(i)(3) ATTESTATION**

I, Esther Kim, am the ECF User whose ID and password are being used to file this Declaration. In compliance with Civil L. R. 5-1(i)(3), I hereby attest that Rudy Y. Kim has concurred in this filing.

Dated: February 13, 2013           By:   */s/ Esther Kim*
                                         ESTHER KIM